WALTER M. ELSWICK, Judge.
During the summer of 1941, the claimant, Mrs. Florence Doyle, was awarded the concession of the dining room at Watoga state park in Pocahontas county, West Virginia, by the director of the state conservation commission pursuant to the authority vested in him by chapter 20, article 8a, section 9 of the West Virginia revised code, as enacted by chapter 64 of the 1939 acts of the Legislature. By this statute, authority is granted the director of the state conservation commission in connection with the state parks and state forests to operate commissaries, restaurants and other establishments for the convenience of the public, and for these purposes the director *270 may purchase equipment, foodstuffs, supplies and commodities as provided and contemplated therein.
On August 11, 1941, the then chief of the division of state parks received a letter from a representative of a convention group making inquiry as to whether or not accommodations could be provided for a group of about 55 persons from September 7,1941 to September 13,1941, in one of the state parks. Inquiry was also made as to rates for rooms, meals, etc. On August 13, 1941 a letter was written by the division of state parks in reply to the letter received which advised that they could accommodate the group of people at Watoga state park for the period at a cost of approximately $5.00 per person for cabin rental for the week, and that meals would be breakfast 40c, lunch 60c and dinner 75c. Copies of this letter were sent to Mrs. Doyle, the claimant, and to the then custodian of Watoga state park. But on August 14, 1941, the then chief of the division of state parks by letter advised the then custodian of Watoga state park that the representative of the group had just called at his office making reservations and arrangements for the conference to be held at the Watoga state park. He further advised that the conference would consist of 55 people, both ladies and gentlemen, and that they were holding cabins numbers 1, 2, 3, 12, 13, 16, 4 and 5 for this group. He further advised that this group was to pay the custodian at the rate of $1.50 per day. Out of this sum the custodian was instructed that $1.00 per day was to be paid to Mrs. Doyle in payment of three daily meals. The letter goes on to state that for the six days 55 persons at $1.50 per day should pay the custodian $495.00, and that out of this sum $330.00 would be paid by the custodian to Mrs. Doyle, the claimant, and that the balance of $165.00 should be submitted with the custodian’s weekly report to the division of state parks. Mrs. Doyle, the claimant, was notified of the contents of this letter by the said park custodian. The then custodian of the park also advised her at the time that he would collect for the meals along with the cabin rental charge pursuant to the arrangements made by the chief of the division of state parks. There is nothing appearang from this *271 letter from the chief of the division of parks addressed to the park custodian, or from the record., that it was in any way to he implied that either the park custodian or Mrs. Doyle was to look to the treasury of the United States Government for pay for either meals or cabin rental.
It appears that the claimant relying upon these representations made to her by these park officials furnished the meals to the group as contracted. The meals furnished by her to this group of persons in accordance with the contract made by the park officials amounted to the sum of $333.00. It appears that she relied upon the representations made at the time by the then officials of said park that the then custodian of said park would collect for the meals from each individual of the group and by reason of said representations so made to her, she made no effort to collect from the group of persons served, or from individuals of said group. It further appears that said representations were made by said park officials while in the scope of their employment. The park custodian was instructed by the chief of the division of parks to collect $1.50 per person per day making a total of $495.00 to be collected from the group for the week. Of this sum he was directed to pay $330.00 to Mrs. Doyle “and the balance of $165.00 will be submitted with your weekly report to this office.”
After the group arrived, for some reason unknown, it appears that the then custodian of the park, without the knowledge of claimant, failed to collect the said sum of money for claimant. It also appears that the then'custodian failed to collect the rental for cabins from this group of persons.
It further appears that the group of persons being served by claimant happened to be a conference of supervisors of the division of education of the works projects administration. After the group had received the accommodations contracted for at the park, and for which the then custodian had failed to collect for either cabin rental or meals, it appears that the conservation commission filed a claim with the treasury department of the United States Government for cabin rental in *272 which claim it included the account of claimant for meals served by her to these persons. The claim was denied by the treasury department and claimant has not been paid for her services. It does appear that one Arel B. Cook, the representative of the conference group gave a check for $15.00 payable to the then park custodian who endorsed same over to claimant, but that said check was worthless and has not been paid. It doesn’t appear from the evidence that the claimant had any negotiations with any official of the Federal Government. All of her negotiations prior to and at the time she rendered the service were with state officials whose duty it was to provide for these accommodations. All arrangements for the care of the convention group while at the park were made by the officials in charge of the park, namely, that the services were to be paid for at the rate of $1.50 per day per person to the park custodian who was to pay over to Mrs. Doyle the sum of $1.00 per day per person, and that the custodian was to account for the proceeds collected in his weekly report. Hence, the claimant did not render credit to the Federal Government or to any employee or official thereof and would not have any claim against its treasury department. She had a right to rely upon the representations made by the officials of the park while in the scope of their duty and employment. From the letter written by the chief of the division of state parks to the park custodian one could not imply that the state was lending its credit to the group or to the treasury department, since it instructs the park custodian that this group was to pay him at the rate of $1.50 per day each. The letter of August 13, 1941, copies of which were sent to the park custodian and to Mrs. Doyle, the claimant, specified that there was to be a $5.00 deposit for each cabin, which was to be credited when the balance was paid to the park custodian. Hence, it cannot be said that the claimant was chargeable with notice that the credit of the state was being given to anyone under the arrangements made by the state officials in charge of this park.
It appears from the evidence that the state conservation commission approved the claim of Mrs. Doyle in the sum of *273 $318.00 and submitted same to the auditor for payment on or about February 13, 1942 as a claim which should be paid by the state conservation commission, and the claimant was then advised by the chief of the division of state parks that check should be received by her on the then following Monday or Tuesday. The requisition as submitted by the commission to the auditor did not give a detailed explanation as to the nature of the claim, neither did it set forth the nature of the contract made by the state officials in charge of the park with Mrs. Doyle at the time the services were rendered by her for the state in furnishing accommodations at the park to the public as it had undertaken to do. The requisition just stated “pay to Mrs. Florence Doyle $318.00” without any detailed information (record p. 22). The state auditor, therefore', returned the requisition and refused payment. In returning same the auditor requested a correct explanation and it appears that a sufficient and satisfactory explanation was not furnished him to justify payment on the statement made to him.
When the claim came on for hearing herein the state auditor was made a party to the proceeding! The claim was heard as an appeal from rejection by the state auditor under an existing appropriation, the auditor,, and Mr. Mills, his assistant being present at the hearing on the claim.
The points of defense to the claim raised at the hearing and in the attorney general’s brief were as follows:
1. That the claim is one against the Federal Government rather than the state of West Virginia.
The facts in the case do not show that the claimant had any dealings or negotiations with the Federal Government or any of its employees, but that her contract was made direct with state officials in charge of the park whose duties were to furnish accommodations to the public, and to collect payment for services rendered under the arrangements which they themselves negotiated and agreed to carry out so far as claimant was concerned.
*274 2. That no benefit or value adhered to the state since all parties served were federal employees, their wives, husbands and children, in attendance at a federal w. p. a. educational convention held at Watoga state park.
So far as the claimant’s services were concerned her services were rendered to the public, that being the intent and purpose of the state in establishing a public park. A distinction cannot be seen under the arrangements made by the park officials for claimant’s pay, as to whether or not it was a ministerial association convention, a state bar association meeting, a state educational meeting, a federal w. p. a. educational convention, or a horse traders’ association convention. All would have to eat and would require accommodations when reservations were secured, but the state conservation commission would not be authorized to furnish either of them meals free of charge under the statute. It did have authority to collect for rental and for other accommodations such as meals served which its officials agreed with claimant to do at the rate of $1.50 per day under the arrangements which they made as stipulated in the said letter addressed to the custodian under date of August 14,1941.
3. That the state conservation commission had no statutory authority to pay out of the general maintenance or other funds of the conservation commission for the services rendered by Mrs. Doyle on credit to the w. p. a. convention group.
The facts in the case do not show that Mrs. Doyle rendered her services on credit to the convention group, but on the contrary, that she relied upon the representations made by the officials in charge of the park while acting in the scope of their employment as officials that the custodian as such official would collect and pay to her for the services rendered. It is, no doubt, true that the state conservation commission had no statutory authority to pay the claimant out of general maintenance funds of the commission, but if it had no “other funds” such as restaurant or commissaries fund provided for under chapter 64, acts of the Legislature 1939, Michie’s code section 2290 (9), or gen *275 eral maintenance funds for such purposes in its appropriation, it should not take an inconsistent position to mislead the claimant in the procedure taken herein. In such case claimant should have been properly advised, and a hearing had as to the validity of the claim justifying an award to be included in future appropriations. Said chapter 64, acts of 1939, Michie’s code section 2290 (9) provides:
“Restaurants and Other Facilities at Recreational Areas. — The director may, in connection with recreational areas in state parks and state forests, operate commissaries, restaurants and other establishments for the convenience of the public. For these purposes the director may purchase equipment, foodstuffs, supplies and commodities, according to law.”
Under this act the officials in charge of the park where a restaurant had been established and was being operated in connection with the recreational areas provided for the covr venience of the public by the director, had the authority to negotiate with the claimant for the services rendered. If the commission should not have the money available for the purpose of paying for such services rendered under contracts made by authority given it by said statute, this fact should be disclosed so that proper, appropriations may be made for the purpose of paying such commitments. By necessity commitments and special arrangements would have to be made from time to time to enable it to operate a restaurant or dining room for the convenience of the public as contemplated by the statute.
4. That the conservation commission could not guarantee to the claimant the meals served gratuitously or on credit to the said convention.
It does not appear from the evidence and record in this case that Mrs. Doyle ever contemplated, or had any reason to-do so, to serve meals gratuitously or on credit to the said convention group. Ón the contrary, she was advised of the special arrangements made by the park officials, that while she was serving meals to the group at a reduced rate, the said official in charge *276 would collect for the meals. By this arrangement made by the said officials she was not given an opportunity to collect for the meals served. No member of the convention group contacted her with reference to charges, but the park officials reduced her rates for meals by their negotiations with representatives of the convention group from $1.45 per day for each person, which she would have been entitled to collect without the special negotiations made, to the sum of $1.00 per day for each person, which the custodian was to collect under the said special negotiations. The claimant was rendering a daily service while the convention group attended the park and had no information that payment was not being collected in accordance with the arrangements made by the park officials with the said convention group, and as represented to her by the park custodian, whose duty it was to provide such accommodations and collect and pay for same pursuant to instructions received by him from the chief of the division of state parks. Otherwise, the claimant was entitled to notice of any change of arrangements made from those represented to her to have been made by such official before she rendered such services.
We are of the opinion that an award should be made to claimant for the sum of three hundred and eighteen dollars ($318.00) and that the auditor would be authorized to pay the same under all the circumstances of the case from existing appropriations available for the purpose, and an order will be entered by a majority of the court accordingly.
Judge Bland dissents.